## UNITED STATES *v.* GALE & Another.

ON CERTIFICATE OF DIVISION FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF FLORIDA.

Submitted November 9th, 1882.—Decided October 15th, 1883.

*Constitution—Criminal Law—Elections—Fraudulent Registration—Grand Jury—Practice—Revised Statutes.*

1. The court adheres to the rulings in *Ex parte Siebold*, 100 U. S. 371, and *Ex parte Clarke*, 100 U. S. 399, that §§ 5512 and 5515 Rev. St. relating to violations of duty by officers of elections are not repugnant to the Constitution of the United States, and holds them to be valid.
2. Where a defendant pleads not guilty to an indictment, and goes to trial without making objection to the mode of selecting the grand jury, the objection is waived ; even though a law unconstitutional, or assumed to be unconstitutional, may be followed in making the panel.
3. An objection to the qualification of grand jurors, or to the mode of summoning or empanelling them, must be made by a motion to quash, or by a plea in abatement, before pleading in bar.

Indictment against inspector and clerk of Election District No. 8, Northern District of Florida, for removal of ballots cast by electors at an election for representative in Congress, and substitution of different ballots. *Mr. Solicitor-General Phillips* for the plaintiffs. No appearance for defendants.

MR. JUSTICE BRADLEY delivered the opinion of the court.

The indictment against the defendants in this case was for misconduct as election officers at an election held in Florida for a representative to Congress, in stuffing the ballot-box with fraudulent tickets, and abstracting tickets which had been voted. In empanelling the grand jury which found the indictment, four persons, otherwise competent, were excluded from the panel for the causes mentioned in section 820 of the Revised Statutes, which grounds are, in substance, voluntarily taking part in the Rebellion, and giving aid and comfort thereto. The exclusion of these persons for this cause appears by an amendment of the record, made *nunc pro tunc*, showing what took place; but no objection was taken to the indictment or proceedings on that account until after a plea of not guilty, and a conviction, when the objection was first taken on motion in arrest of judgment. The indictment was founded upon sections 5512 and 5515 of the Revised Statutes, and the constitutionality of those sections was called in question, as well as that of section 820. The judges having disagreed upon the motion in arrest of judgment, certified up the following questions for the determination of this court, namely:

1. Whether sections 5512 and 5515 of the Revised Statutes of the United States, on which such indictment was founded, are repugnant to and in violation of the Constitution of the United States? 2. Whether section 820 of the Revised Statutes of the United States is repugnant to and in violation of the Constitution of the United States? 3. Whether judgment of this court could be rendered against the defendants on an indictment found by a grand jury empanelled and sworn under the section aforesaid? and 4. Whether the indictment aforesaid charges any offence for which judgment could be rendered against the defendants in this court under the Constitution and laws of the United States?

The question of the validity of sections 5512 and 5515 has already been decided by this court in the cases of *Siebold* and *Clarke*, 100 U. S. 371, 399, and was determined in favor of their validity. As to those sections, therefore, the answer must

be in the negative, namely, that they are not repugnant to, nor in violation of, the Constitution of the United States.

The second question, as to the constitutionality of the 820th section of the Revised Statutes, which disqualifies a person as a juror if he voluntarily took any part in the Rebellion, is not an essential one in the case; inasmuch as, by pleading not guilty to the indictment, and going to trial without making any objection to the mode of selecting the grand jury, such objection was waived. The defendants should either have moved to quash the indictment or have pleaded in abatement, if they had no opportunity, or did not see fit, to challenge the array. This, we think, is the true doctrine in cases where the objection does not go to the subversion of all the proceedings taken in empanelling and swearing the grand jury; but relates only to the qualification or disqualification of certain persons sworn upon the jury or excluded therefrom, or to mere irregularities in constituting the panel. We have no inexorable statute making the whole proceedings void for any such irregularities.

Chitty, in his work on Criminal Law, vol. 1, p. 307, says:

"It is perfectly clear that all persons serving upon the grand jury must be good and lawful men; by which it is intended, that they must be liege subjects of the king, and neither aliens nor persons outlawed even in a civil action; attainted of any treason or felony; or convicted of any species of *crimen falsi*, as conspiracy or perjury, which may render them infamous. And if a man who lies under any of these disqualifications be returned, he may be challenged by the prisoner before the bill is presented; or, if it be discovered after the finding, the defendant may plead it in avoidance, and answer over to the felony; for which purpose he may be allowed the assistance of counsel on producing in court the record of the outlawry, attainder, or conviction, on which the incompetence of the juryman rests."

This is undoubtedly the general rule as to the manner in which objection may be taken to the personnel of the grand jury, though in this country a motion to quash the indictment may be made instead of pleading specially in abatement. The requirement of answering over to the felony in connection

with the plea in abatement is for the benefit of the accused, in order that he may not be concluded on the merits if he should fail in sustaining his special plea,—a precaution which probably would not be necessary in our practice.

By an English statute passed in the 11th year of Henry IV., it was declared that indictments made by persons not returned by the sheriff, or by persons nominated to him, or who were outlawed or had fled to sanctuary for treason or felony, should be void, revoked and annulled. On this statute it was held that if any such persons were on a grand jury which found an indictment, it made the whole void, and if the matter appeared on the record, or in the proceedings of the same court, advantage might be taken of it on motion in arrest of judgment, or even on the suggestion of an *amicus curiæ;* but if it did not appear on the record of the cause, or in the records of the same court, the better opinion was that it could only be pleaded in abatement, or raised by motion to quash. Hawkins says :

" If a person who is tried upon such an indictment take no exception before his trial, it may be doubtful whether he may be allowed to take exception afterward, because he hath slipped the most proper time for it ; except it be verified by the records of the same court wherein the indictment is depending, as by an outlawry in the same court of one of the indictors, etc." Hawkins, book 2, ch. 25, sect. 27.

In Bacon's Abridgment (Juries, A) it is said that the court need not admit of the plea of outlawry of an indictor unless he who pleads it have the record ready, or it be an outlawry of the same court ; and it is added, as the better opinion, that no exception against an indictor is allowable, unless the party takes it before trial. Chitty lays down the same rule. 1 Crim. L. 307–8. Lord Chief Justice Hale, speaking of what the caption ought to contain, among other things, says :

" It must name the jurors that presented the offence, and therefore a return of an indictment or presentment *per sacramentum* A. B., C. D., *et aliorum,* is not good, for it may be the

presentment was by a less number than twelve, in which case it is not good (H. 41 Eliz. B. R. Croke, n. 16, *Clyneard's Case,* p. 654); and it seems to me that all the names of the jurors ought to be returned ; for the party indicted may have an exception to some or one of them, as that he is outlawed, in which case the indictment may be quashed by plea, though there be twelve besides without exception ; for possibly that one, who is not *legalis homo,* may influence all the rest, and so vitiate the whole indictment."

All these authorities tend to the same point, namely, that the proper mode of taking objection to the personnel of the grand jury, even under the statute referred to, when the matter does not appear of record, is by plea in abatement.

If under the operation of so stringent a statute as that of 11 Hen. IV., the general rule was, that the objection to the constitution of the grand jury must be taken before trial, and could only be taken afterward when it appeared on the record, much more would it seem to L requisite that all ordinary objections based upon the disqualification of particular jurors, or upon informalities in summoning or empanelling the jury, where no statute makes proceedings utterly void, should be taken *in limine,* either by challenge, by motion to quash, or by plea in abatement. Neglecting to do this, the defendant should be deemed to have waived the irregularity. It would be trifling with justice, and would render criminal proceedings a farce, if such objections could be taken after verdict, even though the irregularity should appear in the record of the proceedings. In most cases it could not appear in a record properly made up ; but, if appearing at all, it would require (as in the present case) a special certificate of the court analogous to a bill of exceptions, or a case stated,—not constituting a part of the true record. But even if it should appear upon the record as a proper part thereof, the fact of pleading to the merits and going to trial without taking the objection would also appear, and would amount in law to a waiver of the irregularity. If it could be taken advantage of on a motion in arrest of judgment, it would be a good ground of reversal on error, and all the proceedings of a long term might be rendered nugatory by

admitting a person to the grand jury, or excluding a person from it, without the matter being called to the attention of the court; whereas, if the objection were taken *in limine*, the irregularity might be corrected by reforming the panel or summoning a new jury.

The remarks apply with additional force where the objection is not to the disqualification of jurors who are actually sworn upon the panel, but to the exclusion, or excuse, of persons from serving on the panel. A disqualified juror placed upon the panel may be supposed injuriously to affect the whole panel; but if the individuals forming it are unobjectionable, and have all the necessary qualifications, it is of less moment to the accused what persons may have been set aside or excused. The present case is of the latter kind. No complaint is made that any of the grand jurors who found the indictment were disqualified to serve, or were in any respect improper persons. It is only complained that the court excluded some persons for an improper cause, that is, because they labored under the disqualification created by the 820th section of the Revised Statutes, which is alleged to be unconstitutional. It is not complained that the jury actually empanelled was not a good one; but that other persons equally good had a right to be placed on it. These persons do not complain. If their right to serve on the grand jury was improperly infringed, perhaps they might complain of being excluded. That is another matter. Or, perhaps, the defendants, if correct in their assumption that the law is unconstitutional, and that the court was governed by an improper rule in excluding persons under it, might have had the benefit of the error by moving to quash the indictment, or by pleading in abatement. But passing by these proper modes of taking the objection, they waited until they had been tried and convicted on a plea of not guilty, and then moved in arrest of judgment. We think they were too late in raising the objection.

Some importance is attached to the fact that the court followed an unconstitutional law, or one assumed to be such. We do not see that this is in any wise different from the case in which the court misconstrues the law. The result is the

same: certain persons, under a misconception of the court, are excluded from the grand jury who are qualified to serve on it; but the jury, as actually constituted, is unexceptionable in every other respect. In either case, whether the court is mistaken as to the validity of a law or as to its interpretation, the objection relates so little to the merits of the case that it ought to be taken in the regular order and due course of proceeding.

There are cases, undoubtedly, which admit of a different consideration, and in which the objection to the grand jury may be taken at any time. These are where the whole proceeding of forming the panel is void; as where the jury is not a jury of the court or term in which the indictment is found; or has been selected by persons having no authority whatever to select them; or where they have not been sworn; or where some other fundamental requisite has not been complied with. But there is no complaint of this kind in the present case: the complaint simply relates to the action of the court in excluding particular persons who might properly have served on the jury. We do not think that this vitiated all the proceedings so as to render them absolutely null and void. It might have sufficed to quash the indictment if the objection had been timely and properly made. Nothing more.

We think that this conclusion is the result not only of the English, but of the better American authorities.

Mr. Wharton, in his section on the "Disqualification of Grand Jurors, and how it may be excepted to," begins by stating the general rule, that irregularities in selecting or empanelling the grand jury, which do not relate to the competency of individual jurors, may usually be objected to, by challenge to the array, or motion to quash; and this must be before the general issue. Crim. Pl. & Pr. 8th ed., § 344. He then shows that in some States it has been held that objections to disqualification of individual jurors can only be taken by challenge, and not by motion to quash or by plea; but that in others the motion to quash, as well as the plea, is allowed; the latter rule being more generally followed, and being more in accordance with the English law. He then adds:

"Ordinarily after the general issue has been pleaded objections are too late ; and when the objection goes to the manner of drawing it should be taken by challenge to the array. . . But on principle, in those cases in which the defendant is surprised, and had no opportunity to take exception until after the finding of the bill, he should be allowed to take advantage of any irregularity by plea." (§ 350.)

We apprehend that the rule last stated is the correct one. But in § 353, it is added, that at common law, if the objection appears of record, and there be no statutory impediment, a motion in arrest of judgment may be entertained.    This last position we do not think is well sustained.   As we have seen, it was by force of the statute of 11 Henry IV. that objections might be taken after the trial in England ; and the American cases referred to by Mr. Wharton do not sustain his observation.   In *Hardin's Case*, 2 Richardson, 533, the motion in arrest of judgment was based on the ground that the grand jury was not such for the term at which the bill was found, and of course the proceedings were *coram non judice*.   In the other cases cited in support of the position, the motions were overruled.   We think that the doctrine of waiver applies as well to cases where the objection appears of record as where it appears by averments ; and that it applies to all cases of objection to the qualifications of jurors, and to the mode of empanelling the jury ; but does not apply to cases where the proceeding is wholly void by reason of some fundamental defect or vice therein.   Brooke's Abr. Indict. 2 ; *Seaborn's Case*, 4 Dev. 305 ; *Robinson's Case*, 2 Parker's Crim. Cas. 308.   In the case in Brooke, persons not *legali homines* were on the grand jury, and it was held that the objection ought to be pleaded before pleading to the felony.   In *Seaborn's Case* it was held that, after conviction of murder, it was too late to take advantage of an error in constituting the grand jury, though it appeared in the record.   In *Robinson's Case*, 2 Parker's Crim. Cas. 235, 308, 311, which was argued by able counsel in the Supreme Court of New York before Justices Parker, Wright and Harris, no precept for summoning the grand jury had been issued by the district attorney to the sheriff, as the law

required, though the sheriff summoned them in the usual way. The court held that this omission did not affect the substantial rights of the prisoner, and that the objection could not be raised after trial and conviction. Many authorities were referred to in the opinion of the court delivered by Mr. Justice Parker, and this general statement was then made :

" It seems to be well settled in most of the States that an objection to the qualification of grand jurors, or to the mode of summoning or empanelling them, must be made by a motion to quash or by a plea in abatement, before pleading in bar."

The subject is also discussed in Bishop's Crim. Procedure, chap. LX., where the same general rule is laid down, though with a reservation of some doubt as to cases where the objection appears of record. (§§ 887, 888.) As before stated, we think that it is the nature of the objection, rather than the fact of its appearing or not appearing on the record, which should decide whether it ought to be taken by a plea in abatement, or whether it may also be taken by motion in arrest of judgment; though, of course, it cannot be taken by such a motion unless it does appear of record.

Being satisfied that the defendants could not raise the question of the constitutionality of section 820 by motion in arrest of judgment, it is not necessary, as before observed, to express any opinion on that point. It may be proper, however, to call attention to the singular position of that section. It was originally enacted as section 1 of the act passed June 17, 1862, entitled " An Act defining different causes of challenge, and prescribing an additional oath for grand and petit jurors in the United States courts," 12 Stat. 430. At that time (1862) it was no doubt a very proper and necessary law; but after the rehabilitation of the insurgent States, the proclamation of general amnesty, and the adoption of the Fourteenth Amendment, guaranteeing equal rights to all citizens of the United States, there would seem to have been no just reason for the continuance of the law; especially as by far the largest portion of white citizens in the States lately in rebellion would be disqualified under it. Accordingly, by the 5th section of the act

commonly called the Enforcement Act, passed April 20, 1871, 17 Stat. 15, Congress, after providing that in prosecutions under that act, no person should be a grand or petit juror who should, in the judgment of the court, be in complicity with any combination or conspiracy punishable by the provisions thereof, repealed the said first section of the act of 1862; and the law remained in this state until the adoption of the Revised Statutes. For some unexplained reason, the revisers imported the section back again into the Revised Statutes (as section 820), although it had not been in force for over two years. It is probable that the fact of its repeal was overlooked by Congress when the revision was adopted; and it is to be hoped that their attention will be called to it.

In conclusion, to the third and fourth questions certified by the court below, the answer will be in the affirmative;

*And it is so ordered.*